**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| GOLDMAN SACHS SPECIALITY | § | |
| LENDING HOLDINGS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-09-01547 |
| | § | |
| CURTIS A. BROOKS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Goldman Sachs Specialty Lending Holdings, Inc. ("Goldman"), sued Curtis A. Brooks and Geoffrey D. Roberts, loan guarantors, for breach of a guaranty contract. Goldman settled with Roberts and dismissed the claims against him. (Docket Entry No. 55). Goldman has moved for summary judgment that Brooks owes $1 million, plus interest, attorney's fees, and costs of court. (Docket Entry No. 58). Brooks has not responded.

Based on the record, the motion, and the relevant law, this court grants Goldman's motion for summary judgment, finding that Brooks owes Goldman $1 million. Goldman is directed to identify any remaining issues or submit a proposed final judgment no later than **May 20, 2011**.

The reasons for the ruling are explained in detail below.

**I.      Background**

Brooks and Roberts (the "Guarantors") are the principals of four companies, Bluewater Outdoor, LLC, Highway Properties, L.L.C., RTM Media, L.L.C. and RTM Services Group, Inc. (the "Borrowers"). The Borrowers are billboard companies. On November 21, 2007, Goldman[1] and the

---

[1]   Goldman Sachs Specialty Lending Group, L.P., was also a party to the agreement. In light of Brooks's admissions, there is no meaningful distinction between the entities for the purposes of this motion. They are collectively referred

Borrowers entered into the Credit and Guaranty Agreement ("Credit Agreement").  (Docket Entry No. 48, Ex. 8).  The Borrowers received $15 million in credit under the Credit Agreement.  (*Id.*, Ex. 1, ¶ 5).  The Guarantors executed two identical Continuing Limited Guaranty Agreements (the "Guaranty").  The Guarantors "unconditionally, absolutely, completely and irrevocably guarantee[d] . . . the due and punctual payment in full of all Obligations when the same shall become due, whether at stated maturity, by required prepayment, declaration, acceleration, demand or otherwise." (*Id.*, Ex. 2, ¶ 1).

The Guaranty included the following provisions:

- The "Guaranty is a continuing guaranty and is a guaranty of payment and performance, (and not a guaranty of collection)."  (*Id.*).

- The Guarantor "shall not be discharged until the Guaranteed Obligations shall have been indefeasibly paid in full . . . . Guarantor shall be regarded, and shall be in the same position, as principal debtor with respect to the Guaranteed Obligations." (*Id.*).

- The Guarantor's "liability hereunder shall be limited to an amount not to exceed **One Million Dollars ($1,000,000.00)** in the aggregate."  (*Id.*).

The Borrowers and Guarantors defaulted in July 2008.  (*Id.*, Ex. 1, ¶ 12; Ex. 15, ¶ 6).  The Borrowers, Guarantors, and Goldman agreed to the Second Amendment to the Credit and Guaranty Agreement and Forbearance Agreement ("Forbearance Agreement"), effective January 29, 2009. (*Id.*, Ex. 11).  In the Forbearance Agreement, the Borrowers and Guarantors acknowledged that "as a result of the Existing Defaults, all of the Obligations and the Guaranteed Obligations under the Credit Documents, at the election of [Goldman], would be absolutely and immediately due and owing by Borrowers and Guarantors, as the case may be, without any defense, deduction, setoff or

to as "Goldman."

2

counterclaim and [Goldman has] full legal right to exercise any and all of their respective rights and remedies under the Credit Documents or otherwise available at law and equity." (*Id.*, ¶ 1(f)). Goldman agreed not to "enforce any rights or remedies under the Personal Guarantees" until, at the latest, March 31, 2009. (*Id.*, ¶ 2(I)). The parties agreed that the "execution or performance" of the Forbearance Agreement would have no effect on the existing defaults. (*Id.*, ¶ 1). Goldman accelerated the debt, which then exceeded $19 million, on April 8, 2009. (*Id.*, Ex. 4). On the same day, it demanded that Brooks perform under the Guaranty. (*Id.*, Ex. 5).

Goldman sued Brooks and Roberts on May 21, 2009. (Docket Entry No. 1). Brooks and Roberts filed a third-party complaint against Bluewater Outdoor, Highway Properties, TRM Media, and RTM Services Group on June 24. (Docket Entry No. 8). This case was originally assigned to another judge of this court. Before transfer, the parties filed several motions. Roberts and Brooks filed a motion to consolidate this case with Goldman's suit against Bluewater Outdoor, Highway Properties, TRM Media, and RTM Services Group. (Docket Entry No. 15). The receiver for Bluewater Outdoor, Highway Properties, TRM Media, and RTM Services Group moved to dismiss the third-party complaint, arguing that Brooks and Roberts's claims against them were not ripe. (Docket Entry No. 17). Goldman filed a motion for summary judgment against Brooks and Roberts. (Docket Entry No. 20). The judge then presiding denied the motions to dismiss and consolidate, (Docket Entry Nos. 18, 47), and denied Goldman's motion for summary judgment without prejudice to refiling at the close of discovery, (Docket Entry No. 49). The judge also granted the motion filed by counsel for Brooks to withdraw, leaving Brooks to hire new counsel or proceed *pro se*. (Docket Entry No. 46).

3

On August 7, the judge recused and the case was assigned to this court.  (Docket Entry Nos. 51, 52).  Goldman settled and dismissed its claims against Roberts on August 17, 2010.  (Docket Entry No. 55).  Goldman filed a motion for summary judgment as to its claims against Brooks .  (Docket Entry No. 48).  Brooks did not respond.  On January 18, 2011, this court extended Brooks's deadline to respond to February 11, 2011.  Brooks still has not responded.

Goldman has submitted competent summary judgment evidence that it contends as a matter of law shows that Brooks breached the Guaranty and owes $1 million, plus attorney's fees and costs.[2] The motion is analyzed below.

## II.     The Legal Standards

### A.        The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact."  *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of

---

[2]    The summary judgment record includes: the affidavit of David Miller, a senior vice-president for Goldman Sachs Specialty Lending Group, L.P., (Docket Entry No. 28, Ex. 1); Brooks's Continuing Limited Guaranty, effective November 21, 2007, (*id.*, Ex. 2); Roberts's Continuing Limited Guaranty, effective November 21, 2007, (*id.*, Ex. 3); the April 8, 2009 Notice of Acceleration letter from Goldman to the Borrowers, (*id.*, Ex. 4); the April 8, 2009 Demand Notice letter from Goldman to Brooks, (*id.*, Ex. 5);  the April 8, 2009 Demand Notice letter from Goldman to Roberts, (*id.*, Ex. 6); UHY Advisors review of RTM Media and Bluewater Outdoor, LLC, (*id.*, Ex. 7); the November 21, 2007 Credit and Guaranty Agreement between Goldman and the Borrowers, (*id.*, Ex. 8); the First Amendment to Credit and Guaranty Agreement, effective May 30, 2008, (*id.*, Ex. 9); e-mails from May 27 and 28, 2008 including Brooks, (*id.*, Ex. 10); the Second Amendment to Credit and Guaranty Agreement and Forbearance Agreement, effective January 29, 2009, (*id.*, Ex. 11); e-mail and attachments regarding the accounts Receivable Charge off Schedule dated January 27, 2009, (*id.*, Ex. 12); the affidavit of David M. Rodi, (*id.*, Ex. 14); Goldman's July 27, 2010 requests for admission, (*id.*, Ex. 15).

4

evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325.  While the party

moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it

does not need to negate the elements of the nonmovant's case.  *Boudreaux v. Swift Transp. Co.*, 402

F.3d 536, 540 (5th Cir. 2005) (citation omitted).  "A fact is 'material' if its resolution in favor of one

party might affect the outcome of the lawsuit under governing law."  *Sossamon v. Lone Star State*

*of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted).  "If the moving party fails to meet

[its] initial burden, the motion [for summary judgment] must be denied, regardless of the

nonmovant's response."  *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir.

2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(a) burden, the nonmoving party cannot survive

a summary judgment motion by resting on the mere allegations of its pleadings.  The nonmovant

must identify specific evidence in the record and articulate how that evidence supports that party's

claim.  *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir.  2007).  "This burden will not be satisfied

by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated

assertions, or by only a scintilla of evidence.'"  *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d

at 1075).  In deciding a summary judgment motion, the court draws all reasonable inferences in the

light most favorable to the nonmoving party.  *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

The moving party bears a heavier burden when seeking summary judgment on a claim or

defense on which it would bear the burden of proof at trial.  *Fontenot v. Upjohn Co.*, 780 F.2d 1190,

1194 (5th Cir. 1986).  "[I]f the movant bears the burden of proof on an issue, either because he is

the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond

peradventure all of the essential elements of the claim or defense to warrant judgment in his favor."

*Id.* (emphasis in original); *see also Meecorp Capital Mkts. LLC v. Tex–Wave Indus. LP*, 265 F.

App'x 155, 157 (5th Cir. 2008) (per curiam) (unpublished) (quoting *Fontenot*, 780 F.2d at 1194).

"If the moving party fails to meet this initial burden, the motion must be denied, regardless of the

nonmovant's response." *Meecorp Capital Mkts.*, 265 F. App'x at 158 (quoting *Little v. Liquid Air

Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

> **B.      Rule 36(b)**

Goldman sent Brooks requests for admissions by certified mail on July 7, 2009.  Rule 36 of

the Federal Rules of Civil Procedure governs requests for admission.  A party may "serve on any

other party a written request to admit, for purposes of the pending action only, the truth of any

matters within the [general scope of discovery] relating to: (A) facts, the application of law to fact,

or opinions about either; and (B) the genuineness of any described documents."[3] FED. R. CIV. P.

36(a).  The Rule provides:

> A matter is admitted unless, within 30 days after being served, the
> party to whom the request is directed serves on the requesting party
> a written answer or objection addressed to the matter and signed by
> the party or its attorney. . . . A matter admitted under this rule is
> conclusively established unless the court, on motion, permits the
> admission to be withdrawn or amended.

FED. R. CIV. P. 36.

Under Rule 36(b), if the party fails to respond to a request for admission within 30 days, the

matter is deemed admitted.  *See Hill v. Breazeale*, 197 F. App'x 331, 336 (5th Cir. 2006) (applying

Rule 36 in a *pro se* case).  Brooks has neither responded nor objected nor moved to withdraw or

amend the admissions.  *See Robles v. Chimky*, No. 1:06-cv-01702-AWI-YNP PC, 2010 WL 235071,

at *2 (E.D. Cal. Jan. 21, 2010) ("Rule 36(b) expressly states that it only operates 'on motion' by a

party. . . . Thus, the Court will not *sua sponte* withdraw Plaintiff's admissions.").  "[I]f the requests

---

[3]  The language of Rule 36 was amended on December 1, 2007.  The changes were "intended to be stylistic only."  *See*
FED. R. CIV. P. 36 Committee Note (2007).

for admissions concern an essential issue, the failure to respond to requests for admission can lead

to a grant of summary judgment against the non-responding party." *Hill*, 197 F. App'x at 336 (citing

*Dukes v. S.C. Ins. Co.*, 770 F.2d 545, 548–49 (5th Cir. 1985)).

## III.   Analysis

A federal court applies the choice-of-law rules of the forum in which it sits. *Klaxon v.*

*Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941).  Under Texas choice-of-law rules, a court

ordinarily defers to the parties' choice of law set out in a contract. *In re J.D. Edwrds World*

*Solutions Co.*, 87 S.W.3d 546, 549 (Tex. 20020).  The Guaranty designates New York law.  (Docket

Entry No. 58, Ex. 2).  New York law applies.

Under New York law, the elements of a breach of contract are: (1) a valid contract; (2)

performed by the plaintiff; (3) breached by the defendant; (4) resulting in damage to the defendant.

*Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011); *First Investors Corp.*

*v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998); *Harsco Corp. v. Segui*, 91 F.3d 337, 348

(2d Cir. 1996).  Goldman contends that the record demonstrates as a matter of law that Brooks

breached the Guaranty by failing to pay the $1 million due when the conditions for payment were

met.

Goldman sent Brooks requests for admission via certified mail July 27, 2010.  Brooks did

not respond.  (Docket Entry No. 58, Ex. 15 at 2, 3).  By failing to respond, Brooks is deemed to have

admitted the matters set out in the requests.  Fed. R. Civ. P. 36(a); *Hill*, 197 F. App'x at 336.  Those

matters deemed admitted satisfy the requirements for breach of contract.  Requests Nos. 3 and 4

asked Brooks to admit that he signed the Guaranty and that it required him to pay up to $1 million.

(*Id.* at 5).  Request No 5 asked that he "[a]dmit that Goldman fully performed under the Credit

Agreement and the Brooks Guaranty by lending money to Borrowers." (*Id.*).  Request No. 11 asked

Brooks to "[a]dmit that the outstanding balance on the underlying loan from Goldman to Borrowers is in excess of $1 million." (*Id.* at 7).  Request No. 13 asked Brooks to "[a]dmit that you have not paid Goldman in satisfaction of the Brooks Guaranty." (*Id.*).  Request No. 14 asked Brooks to "[a]dmit that you owe the amounts due under the Brooks Guaranty without any defense, deduction, setoff or counterclaim." (*Id.*).

Brooks's admissions show the elements of a breach of contract under New York law. Goldman has demonstrated as a matter of law that Brooks breached the Guaranty and owes $1 million.

Goldman requests attorney's fees in addition to the $1 million due under the Guaranty.  "In diversity cases, state law governs both the award of and reasonableness of attorney's fees." *K3C Inc. v. Bank of Am., N.A.*, 204 F. App'x 455, 467 (5th Cir. 2006) (per curiam) (unpublished) (citing *Mathis v. Exxon Corp.*, 302 F.3d 448, 461–62 (5th Cir. 2002)).  New York law allows a prevailing party in a breach of contract case to collect attorney's fees when the contract provides for such fees. *TAG 380 v. ComMet 380, Inc.*, 890 N.E.2d 195, 201 (N.Y. 2008) (citing *Hooper Assocs. v. AGS Computers*, 548 N.E.2d 903, 904 (N.Y. 1989)).

The Guaranty does not contain an attorney's fee provision.  Goldman points to Paragraph 18(a) of the Guaranty stating that it should be "construed, administered and applied in accordance with the terms and provisions" of the Credit Agreement, "unless otherwise expressly indicated herein." (Docket Entry No. 58, Ex. 3, ¶ 18(a)).  Paragraph 10.2(h) of the Credit Agreement provides for payment of "all costs and expenses, including reasonable attorneys' fees (including allocated costs of internal counsel) and costs of settlement [incurred by Goldman after a Default or Event of Default] in collecting any payments due from any Credit Party hereunder or under the other Credit Documents by reason of such Default or Event of Default (including in connection with . . . the

8

enforcement of the Guaranty)." (*Id.*, Ex. 8, ¶ 10.2(h)).  Request No. 15 asks Brooks to "[a]dmit that you agreed to pay Goldman the reasonable attorney's fees incurred by Goldman in enforcing the Brooks Guaranty." (*Id.*, Ex. 15 at 7).  As noted, Brooks did not respond.  His liability for attorney's fees is deemed admitted.

The record includes both Brooks's deemed admission that he agreed to pay reasonable attorney's fees and the statement in the Guaranty that Brooks's "liability hereunder shall be limited to an amount not to exceed **One Million Dollars ($1,000,000.00)** in the aggregate." (Docket Entry No. 58, Ex. 2, ¶ 1(x) (emphasis in original)).  "When an agreement is unambiguous on its face, it must be enforced in accordance with the plain meaning of its terms." *Vintage, LLC v. Laws Constr. Corp.*, 920 N.E.2d 342, 343 (N.Y. 2009) (citing *Greenfield v. Philles Records*, 780 N.E.2d 166, 170 (N.Y. 2002)).  Goldman's motion for summary judgment is granted insofar as it seeks to enforce Brooks's obligation to pay up to $1 million in the aggregate.  The motion is denied insofar as it seeks fees and costs that would make the aggregate amount exceed $1 million.

## IV.    Conclusion

This court grants summary judgment that Brooks owes Goldman $1 million.  Goldman is directed to identify any remaining issues or submit a proposed final judgment no later than **May 20, 2011**.

SIGNED on May 6, 2011, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

9